IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JAYSON NEIL SPARKS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:19-CV-265-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Jayson Neil Sparks, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be dismissed in part and denied in part.

**I. PROCEDURAL HISTORY**

Petitioner was indicted in Tarrant County, Texas, Case No. 1403502D, with one count of continuous sexual abuse of A.S. (count one), a child younger than 14 years of age. (Clerk's R. 6.) The indictment also included additional counts alleging lesser-included offenses of aggravated sexual assault of a child (counts two and three) and indecency with a child by contact

(count four). (Id.) A jury found petitioner guilty on count one and assessed his punishment at 30 years' imprisonment in absentia. (Id. at 143.) The appellate court affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. (Docket Sheet 1-2, doc. 14-2.) Petitioner also filed a state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (Action Taken, doc. 14-18.) This federal habeas petition followed.

The state appellate court summarized the facts of the case as follows:

> A.S. lived with her biological Father [petitioner], her Mother, her older sister C.S., and her two younger siblings. One morning, while the rest of the family was still asleep, [petitioner] instructed then nine-year-old A.S. to come to a downstairs room. A.S. did so, still wearing the pajama shorts that she had slept in, and [petitioner] told her to "squat." A.S. complied, and [petitioner] put his hand inside of her shorts and inserted his finger into her vagina, or as A.S. referred to it, her "hole." A.S. told [petitioner] to stop, and after a few seconds, he removed his hand and returned to bed. A.S. did not tell anyone what had happened.
>
> On another occasion, when Mother was away from home one night, [petitioner] told then ten-year-old A.S. to come upstairs to his bedroom and to lay down with him, under the covers and in the dark. A.S.'s youngest sibling joined them, but after she left to go use the bathroom, [petitioner] put his hand under A.S.'s underwear and inserted his finger into her vagina for a few seconds. A.S. stayed in bed with [petitioner] for the rest of the night and did not tell anyone what had happened.

2

When A.S. was eleven years old, she and the rest of her family were watching a movie at home one night. According to A.S., when Mother and A.S.'s siblings were asleep, [petitioner] began to tickle A.S., including along her inner thigh, and "accidentally touched [her] hole" for a few seconds. [Petitioner] later acknowledged that his thumb had actually entered A.S.'s vagina.

A.S. told her grandmother what had happened when [petitioner] was tickling her, A.S.'s grandmother spoke to Mother, and authorities soon initiated an investigation. CPS interviewed A.S., as did a forensic interviewer at Alliance for Children, and a sexual assault nurse examiner at Cook Children's Medical Center examined A.S, who disclosed the three incidents involving [petitioner]. A.S., her Mother, and her siblings moved out of the home; A.S. blamed herself for what had happened and was hospitalized for attempting to commit suicide; and [petitioner] was eventually arrested after voluntarily giving an interview to a detective on the case.

At trial, A.S. recalled a time when [petitioner] once showed her a glass dildo and asked her if she knew what it was. A.S. told [petitioner] that it was a sex toy. A.S. also recalled that [petitioner] had shown her and C.S. how to shave their pubic areas. According to A.S., after they removed their "bottoms," [petitioner] "demonstrated how to shave on [C.S.] first and then went to [her]." C.S. also testified that [petitioner] had shown her how to shave her pubic area, although she recalled that she was alone with [petitioner] at the time. According to the detective who interviewed [petitioner], he told her that he had taught A.S. and C.S. how to wash their private areas and that "he watched them a few times to make sure they were cleaning themselves right."

[Petitioner] denied penetrating A.S.'s vagina with his finger in the downstairs room and in his bedroom, and regarding the last incident that occurred during the movie, he explained that his thumb had accidentally entered A.S.'s vagina because as he was tickling her, she was also moving and scooting all about. [Petitioner] admitted that in addition to wrestling or roughhousing with his daughters, he played an "innocent game" with A.S. in which he would poke the area around

3

her breast and say, "Boob."

(Mem. Op. 2-4, doc. 14-3 (footnotes omitted).)

## II. ISSUES

Petitioner's grounds for relief are multifarious and are construed as follows (all spelling, punctuation, or grammatical errors in the quoted material is in the original):

(1) the state did not meet its "burden of Proof — reasonable doubt" because

  (a) the prosecutor used more "alleged evidence of acts than there were total counts in the indictment" and did not elect which acts "were to be assigned to which count";

  (b) petitioner's interview with law enforcement was a coercive custodial interrogation without being afforded the *Miranda* warnings;

  (c) C.S.'s testimony was inadmissible under Texas Rule of Evidence 403;

  (d) the "trial court erred in admitting the subject of a sex toy," which should have been excluded under Texas Rule of Evidence 403;

  (e) A.S.'s testimony proved twice that the prosecution's "main charge against [petitioner] was an accident"; and

  (f) evidence of the "shaving incident" was inadmissible extraneous-offense evidence under Texas Code of Criminal Procedure article 38.37 and should have been excluded under Texas Rule of Evidence 403;

(2) the trial judge erred by

  (a) failing to sua sponte issue a limiting instruction or declare a mistrial when the prosecutor "referenced 'confession'" during opening argument;

  (b) failing to sua sponte issue a limiting instruction

4

          or declare a mistrial "to the prosecutor presenting more alleged acts than the indictment supports" or make the prosecutor elect "which acts tie to which counts";

    (c)   allowing "evidence that was proven to be a conflict of testimonies";

    (d)   allowing "the subject of a sex toy to be admitted after saying he couldn't prove who's it was & that it didnt meet reasonable doubt":

    (e)   failing to issue "limiting instructions striking from the record or declaring a mistrial to the prosecutors vicious, damaging & highly prejudicial closing remarks";

    (f)   failing to issue "limiting instructions striking from the record or declaring a mistrial [to] the prosecutors vicious, damaging & prejudicial improper closing remarks" at sentencing;

    (g)   allowing "a guilty conviction to proceed knowing that the elements of 2 crimes hadnt been met";

    (h)   failing to allow petitioner "the rite of allocution which is a federally protected act";

(3)   the state engaged in prosecutorial misconduct by

    (a)   referencing "confession (custodial interrogation)" in opening argument;

    (b)   stating an "opinion or belief of [petitioner] being guilty in opening argument";

    (c)   alleging "more acts happened than there were total counts of the indictment . . . to lead to a possible greater offense conviction";

    (d)   stating an "opinion of [petitioner] being guilty in closing argument, despite 2 counts being proven false";

    (e)   attacking petitioner's credibility, vouching for the credibility of a witness, giving "opinion statements of [petitioner's] character & misstated facts that were presented in evidence";

5

  (f) making "damaging & desparaging remarks" about petitioner, his character, and his credibility, referencing multiple improper opinions, asking the jury to "incapacitate [petitioner]" and to "keep [petitioner] out of society," and calling petitioner "a textbook predator & the biggest narcissist you'll ever see in both closing remarks";

(4) he received ineffective assistance of counsel at trial and on appeal because

  (a) trial counsel failed to object to the prosecutor's reference to his "confession" or request a limiting instruction or mistrial and failed to object to prosecutor's "statement of opinion or belief of [petitioner] being guilty" in opening argument;

  (b) trial counsel failed to request a limiting instruction or a mistrial regarding the prosecutor's use of "more alleged acts than there were total counts" in the indictment;

  (c) trial counsel failed to object or request a limiting instruction or mistrial to the prosecutor's highly improper and prejudicial closing arguments at both trial and sentencing;

  (d) trial counsel failed to file a pretrial motion to suppress petitioner's interrogation video; to give a meaningful opening argument; to call any exculpatory and known witnesses; to present a meaningful defense theory; to cross-examine witnesses in an effective manner; to "raise any sort of reasonable doubt or innocence"; to "raise the fact that the shaving was done for medical necessity and present that as a defense"; to give meaningful closing argument; to "bring up or present [petitioner's] interrogation as not just a formal interview but as a custodial interrogation"; and to bring up the fact that petitioner was arrested before a complaint or indictment was filed; and

  (e) appellate counsel failed to raise "the items [petitioner]` raised on appeal other than the 403 exclusion of C.S. testimony"; to communicate with

6

     petitioner; and to send petitioner a copy of the transcripts.

(Pet. 6-7, 11-16, doc. 1 (record citations omitted).[1])

### III. RULE 5 STATEMENT

Respondent does not believe that the petition is successive or untimely, however she believes that all but one of petitioner's claims are unexhausted and/or procedurally barred. (Resp't's Ans. 7-8, doc. 15.)

### IV. EXHAUSTION AND PROCEDURAL DEFAULT

Respondent asserts that petitioner's grounds 1(a), 1(d)-(f), 2(a)-(b), 2(d)-(h), 3(b)-(d), 3(e), in part, 3(f), and 4(a)-(e) are unexhausted and procedurally barred from the court's review and should be dismissed. (Id. at 12-16.) Petitioners seeking habeas-corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state, in this case the Texas Court of Criminal Appeals, on direct appeal or in state post-conviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). The exhaustion requirement is

---

[1]Because additional pages are attached to the form petition, the pagination in the ECF header is used.

"not satisfied if the petitioner presents new legal theories or factual claims in his federal habeas petition." *Reed v. Stephens*, 739 F.3d 753, 780 (5th Cir. 2014) (quoting *Anderson v. Johnson*, 338 F.3d 382, 386 (5th Cir. 2003)).

Having reviewed the state court records, the court agrees that the designated grounds, except for ground 4(c), do not sufficiently correspond with petitioner's claims raised on appeal or in his state habeas application. (App. Br. 2, doc. 14-5; SHR² 17-26.) Thus, the claims raised for the first time in this federal petition are unexhausted for purposes § 2254(b)(1)(A). Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of exhausting the claims. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4 (West 2015). The abuse-of-the-writ doctrine represents an adequate state procedural bar to federal habeas review. *See Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the designated grounds, save for ground 4(c), are unexhausted and procedurally barred from this court's review.³

---

²"SHR" refers to the record of petitioner's state habeas proceeding in WR-89,311-01.

³A petitioner may overcome a procedural default by demonstrating either cause and actual prejudice for the default or a showing that he is actually innocent of the crime for which he stands convicted. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992); *Ylst v. Nunnemaker*, 501 U.S. 797, 801-07 (1991); *Smith v. Johnson*, 216 F.3d 521, 523-24 (5th Cir. 2000). Petitioner presents no

8

Respondent asserts that petitioner's grounds 1(b), 2(c), 3(a), and 3(e), in part, are also procedurally barred from the court's review. (Resp't's Answer 10-12, doc. 15.) Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claim when the last state court to consider the claim expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 729, (1991); *Johnson v. Puckett*, 176 F.3d 809, 823 (5th Cir. 1999); *Fisher*, 169 F.3d at 300. In Texas, record-based claims that could have been raised on direct appeal, but were not, will not be considered on state habeas review proceedings and are forfeited. *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit recognizes that this state rule is an adequate

---

"new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial" to support an actual-innocence claim. Instead, he asserts that his lack of exhaustion and procedural default of the claims should be excused based on ineffective of assistance of trial and appellate counsel. (Pet'r's Traverse 1-8, doc. 19.) However, petitioner's ineffective-assistance-of-appellate-counsel claims are themselves procedurally defaulted because he did not raise the claims in his state habeas proceeding and "cannot furnish the basis for cause and prejudice enabling federal review of the underlying unexhausted habeas claims. *See Hatten v. Quarterman,* 570 F.3d 595, 605 (5th Cir. 2009). Nor has he demonstrated that his ineffective-assistance-of-trial counsel claims are "substantial." *Martinez v. Ryan,* 566 U.S. 1, 14 (2012). For a claim to be "substantial," a "prisoner must demonstrate that the claim has some merit." *Id.* Conversely, an "insubstantial" ineffective assistance claim is one that "does not have any merit" or that is "wholly without factual support." *Id.* at 15. Petitioner alleges a laundry list of errors by trial counsel, without demonstrating how the alleged errors were constitutionally deficient or any specific prejudice. Such conclusory allegations do not support a claim(s) of ineffective assistance of counsel. *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998).

procedural bar to federal habeas review. *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007); *Brewer v. Quarterman*, 466 F.3d 344, 347 (5th Cir. 2006).

Although raised in petitioner's state habeas application, the state habeas court found that the claims could have been raised on direct appeal, but were not, and thus were forfeited. (SHR 69-74, doc. 14-20.) The state court clearly relied upon a firmly established and regularly followed state procedural rule to deny the claims grounds that, in turn, represents an adequate state procedural bar to federal habeas review. Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated, the designated grounds are procedurally barred from the court's review. *See supra* note 2 and accompanying text.

Because all of petitioner's grounds, save for two, are procedurally barred, the following discussion applies only to grounds 1(c) and 4(c).

## V. DISCUSSION

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as

10

established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003); *Williams v. Taylor,* 529 U.S. 362, 399 (2000).

Furthermore, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume

that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If there is no related state-court decision providing the court's reasoning, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case and then determines whether its decision was contrary to or an objectively unreasonable application of that law. 28 U.S.C.A. § 2254(d)(1); *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006).

Under ground 1(c), petitioner claims C.S.'s testimony regarding the shaving incident was highly inflammatory and prejudicial and was inadmissible under Texas Rule of Evidence 403. (Pet. 11, doc. 1.) In the last reasoned state court decision on the issue, the state appellate court addressed the claim as follows:

> [Petitioner] argues that the trial court abused its discretion by admitting C.S.'s testimony that [petitioner] shaved her pubic area. He contends that its probative value was substantially outweighed by the danger of unfair prejudice because "[i]t isn't evident exactly what the testimony of [his] shaving lesson for C.S. was meant to prove," the State's need for the evidence was "minuscule," and the evidence "merely served to instill a prejudice or bias in the minds of the jury against [petitioner]'s unique method of parenting."
>
> Although generally admissible, relevant evidence may nevertheless be excluded under rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. "Unfair prejudice does not arise from the mere fact that evidence injures a party's case," because "[v]irtually all evidence that a

12

party offers will be prejudicial to the opponent's case, or the party would not offer it." Rather, evidence is "unfairly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." To exclude evidence under rule 403, there must be a "clear disparity between the degree of prejudice of the offered evidence and its probative value." We balance (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence.

As [petitioner] observes, "this was a classic case of he-said/she-said"—A.S. accused [petitioner] of inserting his finger into her vagina, and [petitioner] denied doing so—and A.S.'s testimony was the only direct evidence of [petitioner]'s guilt. The State therefore elicited testimony from both the detective who interviewed [petitioner] and a director from Alliance for Children that [petitioner] had groomed A.S. by engaging her in numerous activities that ranged from wrestling, tickling, and playing the "Boob" game to introducing sex toys, observing A.S. and C.S. wash their private areas, and shaving both A.S.'s and C.S.'s pubic areas. As the detective explained, and as the progression of activities implies, grooming "is where you take innocent touches and they become more sexual, testing the boundaries of the child, and also desensitizing the child for greater access . . . , to where they can go further each time." The grooming evidence that [petitioner] shaved C.S.—probative of [petitioner]'s relationship with A.S., his state of mind, or even a plan—consequently functioned to discredit [petitioner]'s credibility and testimony while circumstantially reinforcing A.S.'s. The probative value of the evidence was high, and the State's need for it was substantial.

As for the other factors, the time needed to develop the evidence was minimal, and although the jury may have considered the evidence distasteful, it was not of the type that has the tendency to suggest a decision on an improper basis.

The probative value of the evidence that [petitioner] shaved C.S. far outweighed any potential

13

> danger of unfair prejudice. The trial court did not abuse its discretion by overruling [petitioner]'s rule 403 objection.

(Mem. Op. 4-6, doc. 14-3 (citations and footnotes omitted).)

A state court's evidentiary rulings are not inherently suspect and are generally not cognizable on federal habeas review of a state conviction. *See Estelle v. McGuire,* 502, U.S. 62, 67 (1991); *Wood v. Quarterman,* 503 F.3d 408, 414 (5th Cir. 2007); *Derden v. McNeel,* 978 F.2d 1453, 1458 (5th Cir. 1983). A state court's evidentiary rulings justify the granting of habeas relief only if they violate a specific constitutional right or render the trial fundamentally unfair. *Johnson v. Puckett,* 176 F.3d 809, 820 (5th Cir. 1999). Even if an evidentiary ruling is found to be a constitutional violation, the petitioner must show actual prejudice—*i.e.,* that the trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (internal quotation marks and citation omitted). In determining whether an erroneous evidentiary ruling had a substantial and injurious effect on the jury verdict, we consider the following: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative; (3) whether there was evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case. *Cupit v. Whitley,* 28 F.3d 532, 539 (5th Cir. 1994).

14

The record shows that C.S.'s testimony was relevant to the issue of grooming and important to the state as corroboration of A.S.'s testimony regarding the incident. Furthermore, assuming the jury believed A.S., the prosecution's case was strong notwithstanding C.S.'s testimony. Petitioner has not shown that the testimony has a substantial or injurious effect or influence on the verdict.

Under ground 4(c), petitioner claims his trial counsel was ineffective by failing to object or request a limiting instruction or mistrial to the prosecutor's highly improper and prejudicial closing arguments at both trial and sentencing. (Pet. 15, doc. 1.) To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show that his counsel's performance was deficient and prejudicial. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To demonstrate prejudice the petitioner must establish a reasonable probability that, but for his counsel's deficient representation, the result of his trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

In petitioner's state habeas application, he merely alleged that "counsel failed to object to prosecutors prejudicial comments during closing arguements [sic]." (SHR 23, doc. 14-20.) The state court determined that the claim was conclusory and did not entitle petitioner to relief under the *Strickland* standard

15

because petitioner failed to "explain what prejudicial comments were made, how the comments prejudiced him, and why his counsel erred by not objecting to the comments." (Id. at 74-75.)

The state court's determination of the claim is not objectively unreasonable. Although petitioner takes the additional step of directing this court to various pages in volumes 4 and 5 of the reporter's record in support of the claim, he provides no further factual or legal development. (SHR 23, doc. 14-20). The law is clear, conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding. *Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir. 2000); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998).

## VI. CONCLUSION

For the reasons discussed herein,

The court ORDERS that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as to grounds 1(a), 1(d)-(f), 2(a)-(b), 2(d)-(h), 3(b)-(d), 3(e), in part, 3(f), 4(a)-(b), and 4(d)-(e) for failure to exhaust state court remedies; dismissed as to grounds 1(b), 2(c), 3(a), and 3(e), in part, as procedurally barred; and denied as to grounds 1(c) and 4(c). The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a showing that reasonable jurists would

16

question this court's procedural rulings or that he was denied a constitutional right.

    SIGNED June __15__, 2020.

                                                       JOHN MCBRYDE  
                                                       UNITED STATES DISTRICT JUDGE